*Evan M. Eastman*
*P.O. Box 58, Fairlee, Vt. 05045*
*06/26/2008*

*Use-of-Force Opinion*
Keene v. Schneider, et al.
Docket # 2:07-cv-79

Included is my opinion concerning the September 15, 2005 matter involving the plaintiff, Mr. Timothy Keene and Vermont State Troopers Daniel Schneider and Jared Hatch. This consultation as well as my adjunct staff participation at the Vermont Police Academy is done as an employee of the Vermont Fish & Wildlife Department, Division of Law Enforcement. Both troopers attended their full-time police officer training at the Vermont Police Academy while I was the lead instructor. Trooper Schneider has attended instructor level training that I provided since the date of this incident.

Based on the facts and opinions hereafter stated, I have found the force utilized in this case to be objectively reasonable pursuant to U.S. and Vermont Supreme Court case law.

Find attached a copy of my resume, which should be accurate as of the date of this report.

**The following have been made available to me for my evaluation:**

- A copy of the Amended Complaint
- A copy of the applicable processing paper work including affidavit of probable cause and incident report
- A copy of the applicable Non-Lethal Use of Force Reporting Form
- A copy of the applicable in-car video, being of poor quality
- Photographs of bruising on the plaintiff's body
- A phone conversation between Trooper Schneider and myself which occurred on 4/23/08
- A phone conversation between Trooper Hatch and myself which occurred on 4/29/08

**Based on the above, I have established and base my opinion on the following assumed chronological facts:**

1. On September 15 and 16, 2005, troopers Schneider and Hatch were lawfully in the performance of their duty.

2. On September 16, 2005 at approximately 12:11AM., trooper Schneider arrived at the Keene residence to investigate a prior disturbance and to issue a no trespass order.

3. Trooper Schneider was invited into the residence by the plaintiff and during a conversation with him, suspected the plaintiff of DUI. The plaintiff refused to submit to field sobriety exercises.

4. Trooper Schneider had probable cause to arrest the plaintiff for suspicion of DUI and advised him that he was under arrest. At about this time Trooper Hatch arrived and was observing from the porch through a window. Trooper Schneider was unaware of trooper Hatch's presence.

5. During the time Trooper Schneider was attempting to verbally position the plaintiff for compliant handcuffing, the plaintiff took a different tone of voice, said "no, I don't think so", crossed his arms and refused multiple commands to turn around for handcuffing. Trooper Schneider warned the plaintiff that Oleoresin Capsicum spray (OC spray) was going to be used, and he still refused to comply.

6. Trooper Schneider than presented the OC spray and again attempted to verbally gain compliance. The plaintiff prepared himself for the effects of the spray by bracing himself and closing his eyes. Trooper Schneider sprayed the plaintiff in the face but did not get the desired effects and again told the plaintiff to turn around and place his hands behind his back with no results.

7. Trooper Schneider than took the plaintiff to the floor with an armbar takedown technique. During this process, the plaintiff appears to have inadvertently hit the door. At about this time, trooper Hatch entered the residence.

8. Trooper Schneider lost control of the plaintiff's arm and or the plaintiff effectively pulled away from trooper Schneider so that they both ended up on the floor, with the plaintiff not under control. The plaintiff tucked his arms tightly under his chest.

9. Troopers Schneider and Hatch verbally and physically attempted to get the plaintiff to remove his arms and place them behind his back for handcuffing. The plaintiff did not comply, and physically prevented the troopers from pulling his arms out from under him.

10. Troopers Schneider and Hatch were concerned about being assaulted by the plaintiff if not quickly controlled. Both troopers Schneider and Hatch applied knee strikes to the plaintiff's body as the plaintiff actively resisted their efforts to get his arms out.

11. Trooper Schneider also applied closed fist strikes to the body of the plaintiff, as well as forearm strikes in an effort to cause the plaintiff to comply. All strikes by both troopers were done in a manner to create a distraction and pain in order to gain control of the plaintiff's arms.

12. Troopers Schneider and Hatch both attempted to pull the plaintiff's arms out during the striking process as well as used verbal commands to no avail.

13. Trooper Schneider decided to try a pressure point pain compliance technique when the distraction strikes did not work. He applied finger-tip "mandibular angle" pressure points at the base of the plaintiff's ears which did not work, and than applied thumb tip "mandibular angle" pressure points. This allowed the officers to pull the plaintiff's arms free and secure the plaintiff in handcuffs.

14. Proper medical attention was provided to Mr. Adams.

**Based on the information available to me and my understanding of the facts of the incident, I have formed the following opinions relative to the use of force:**

Trooper Schneider was attempting to affect a lawful arrest in the residence of the plaintiff. Both troopers acknowledge that the fact they were in the plaintiff's home, created additional concerns for them as to their safety. They were concerned because there were more unknowns involved, such as the presence of weapons or other persons. These are reasonable perceptions, and should be of concern to a reasonable officer. The fact that the plaintiff might also feel more empowered to resist in his own home could also be a concern for a reasonable officer.

Trooper Schneider repeatedly tried to convince the plaintiff to comply with his directions to submit to handcuffing. He made it clear that the plaintiff was under arrest and that he needed to turn around for handcuffing. Trooper Schneider noted cues that led him to believe that the plaintiff was going to physically resist his efforts to arrest him. These included taking a face to face position with him, crossing his arms and verbally resisting his instructions by saying "no". A reasonable officer should be concerned with these cues. As trained at the Vermont Police Academy, compliant handcuffing is done by having the person turn around and place their hands behind their backs. The officer than draws his handcuffs and approaches, applying the handcuffs.

Trooper Schneider advised the plaintiff of the possibility that he would use OC spray, and explained that it would hurt and presented it. Trooper Schneider again told the plaintiff to turn around and to place his hands behind his back. The plaintiff again stated "no". The plaintiff braced for the effects and closed his eyes. Trooper Schneider felt that the plaintiff was attempting to minimize the effect of the OC and was going to physically resist. This would be a reasonable officer perception. The use of OC spray in this situation is text book. Trooper Schneider had a reasonable perception that the plaintiff would actively resist and

possibly be assaultive if he was to attempt to physically place the plaintiff in handcuffs. As trained at the Vermont Police Academy, active resistance is when the non-compliance has been or is reasonably expected to be enhanced with physical or mechanical resistance, short of assaultive.

Trooper Schneider sprayed the plaintiff in the face with the OC spray. It appeared to distract the plaintiff, but did not have the desired effect that often brings about compliance. Trooper Schneider again tried to verbally position the plaintiff for handcuffing to no avail. The plaintiff stated "fuck you" twice. A reasonable officer perception would be that the person would continue to actively resist and possibly assault the officer.

Trooper Schneider than took the plaintiff to the floor with an armbar takedown technique. As taught at the Vermont Police Academy, the armbar takedown is the primary method of directing someone to the floor and under the situation that trooper Schneider was in would be the tactic of choice. The OC spray did not have the desired effect and the plaintiff was still a threat. The armbar takedown is accomplished by controlling one arm and applying pressure to the triceps tendon area. Stabilization on the floor in this manner was the best tactic and is a reasonable officer response. During the takedown the plaintiff appears to have hit the door or wall. In the confines of a residence or almost any real world environment, this is an unfortunate possibility. This does not make this use of force any less reasonable.

At about this time, trooper Hatch entered the house after having observed a short time from the porch. He did not hear the prior conversation, but he did observe the plaintiff get sprayed with OC and taken to the floor by trooper Schneider. Trooper Hatch was also concerned about the unknowns that were present, such as the possibility of weapons or other people in the house.

Trooper Schneider lost control of the plaintiff in some fashion, and the plaintiff ended up on the floor in a face down position with his forearms tensed under his chest and his biceps held tight against his body. Both troopers verbally and physically attempted to remove the plaintiff's arms for handcuffing but the plaintiff actively resisted their efforts stating "no" at least twice. Both troopers were down on the ground with the plaintiff. Both troopers were concerned about the plaintiff assaulting them from this position or having other persons in the house that might assist him. Trooper Hatch expressed a concern about the plaintiff possibly having a gun underneath him or grabbing his sidearm or himself. These are all reasonable officer perceptions. There was a real possibility that the plaintiff would launch an assault on the troopers from this position. Both officers were in grappling range of the plaintiff who was not being controlled. He could possess a weapon, disarm the troopers or assault with his hands or feet. As taught at the Vermont Police Academy, an officer is at a disadvantage when on the ground with an offender and not handcuffing and can quickly become exhausted under the exertion and stress of the encounter.

The troopers were faced with a dilemma. They had a person who was actively resisting and was a real threat to their safety. They had few choices available to them. The use of OC spray had already been tried with little effect. They had attempted to pull the arms free, but the plaintiff successfully resisted those efforts. Neither officer was armed with an electronic control device such as a Taser, so that option was not available. After both troopers were unsuccessful at pulling the plaintiff's arms free, they applied knee strikes to the body of the plaintiff in a distraction / pain compliance fashion. At about this time the plaintiff again stated "fuck you". As taught at the Vermont Police Academy, striking techniques can be used for other than incapacitation. They can be directed at parts of the body where lasting injury is not likely and they can distract and or cause pain to the offender to allow the officer

to gain control. In addition, these techniques allow the officer an opportunity to physically control the offender and to deter an assault. The use of strikes in the manner applied by the troopers is a viable and reasonable officer tactic.

Trooper Schneider also used closed fist strikes and forearm strikes in his efforts to gain control of the plaintiff. As with the knee strikes, these were directed at the body of the plaintiff and in the manner to distract and cause enough pain to allow them to gain control. These strikes were short, quick strikes at areas of the body not likely to cause a lasting injury. The fact that multiple strikes were delivered does not make the use of force unreasonable. Again, these are quick and rather low impact strikes that may require a sufficient number of strikes be used to create enough pain to gain compliance. The troopers tried unsuccessfully on more than one occasion to remove the plaintiff's arms verbally and physically during this striking process. The plaintiff was still able to effectively counter the troopers after the application of the strikes. These strikes were reasonable officer responses. At this point, the troopers endurance was becoming an issue.

Trooper Schneider was running out of ideas and options. He considers a strike to the head, but was not sure that it would be an appropriate tactic. He than attempted a pressure point tactic commonly referred to as a mandibular angle pressure point. This was done by using the tips of his index fingers to apply pressure at the base of the ear and in toward the jaw. This technique creates pain. This did not work, so he re-applied the technique using the tips of the thumbs. At this point they were able to remove the plaintiff's arms and place him into handcuffs. The use of the pressure points was a reasonable officer response. Vermont police officers are not taught pressure point techniques at the Vermont Police Academy Basic Full-time Academy. The fact that this tactic was eventually successful does not make the use of the striking techniques any less reasonable.

Based on the above assumptions and opinions, the officers acted consistent with their training at the Vermont Police Academy and were objectively reasonable in their use of force . As such their actions relative to their use of force should be considered lawful.

Respectfully,

*[signature]*

Evan M. Eastman
State Game Warden Specialist

RESUME

*Evan M. Eastman*
*P.O. Box 58, 43 Hillside Drive*
*Fairlee, Vt. 05045*
*802-333-4815*

EDUCATION:

    1979 Graduate of Northeastern University, Boston, MA
    Bachelor of Science Degree in Criminal Justice

    1980 Graduate of the Vermont Police Academy, Pittsford, VT

EMPLOYMENT:

    Vermont Department of Fish & Wildlife
    Division of Law Enforcement
    103 South Main St.
    Waterbury, Vermont
    05671

    Position: State Game Warden Specialist (Use-of-Force Specialist)
    Assignment: Patrol duties and lead instructor in use of force
    Employment date: 8/20/79

ADJUNCT INSTRUCTOR POSITION:

    Vermont Criminal Justice Training Council (VCJTC)
    Vermont Police Academy
    RR 2, Box 2160
    Pittsford, Vermont
    05763

    Adjunct instructor since 1992. Presently provide instructor and instructor-trainer certification programs in defensive tactics, expandable (straight) baton, and side-handle baton. Lead instructor for VCJTC non-lethal use-of-force training to VCJTC full-time basic-recruit classes.

INSTRUCTOR RELATED TRAINING RECEIVED:

    Monadnock PR-24 Instructor, 1990, VPA
- PR-24 Instructor certification

    Monadnock International PR-24 Seminar, 1992, OPATA (Ohio)
- PR-24 Intermediate Instructor certification

Mace Security Int. Non Lethal Use Of Force Instructor, 1994, VPA
- Police Non-Lethal Use of Force Instructor certification

Monadnock International PR-24 Seminar, 1995, OPATA
- PR-24 Intermediate Instructor Re-certification
- Defensive Tactics System Instructor-Trainer certification

Monadnock Expandable Baton Instructor-Trainer, 1996, Agawam, MA
- Expandable (straight) Baton Instructor-Trainer certification

Monadnock International PR-24 Seminar, 1996, OPATA
- PR-24 International Instructor certification
- Defensive Tactics System International Instructor certification
- Expandable (straight) Baton International Instructor certification
- Counter - Assault Systems Expandable Baton National Trainer certification

TJA OC Spray Instructor Course, 1997, VPA
- OC spray Instructor certification

Monadnock International Instructor Seminar, 1998, Baton Rouge, LA
(also staffed)
- PR-24 International Instructor re-certification
- Defensive Tactics System International Instructor re-certification
- Expandable (straight) Baton International Instructor re-certification
- Counter – Assault Systems Expandable Baton National Trainer re-certification

Advanced Instructor (and Curriculum) Development, 2000, VPA

Monadnock International Instructor Seminar, 2000, New Orleans, LA
(also staffed)
- PR-24 International Instructor re-certification
- Defensive Tactics System International Instructor re-certification
- Expandable (straight) Baton International Instructor re-certification

N.A.D.E.A.U. Redman Simulation Instructor Course, 2000, Burlington, VT
- Redman Simulation Instructor certification

OC Instructor Course (Smith Enterprises), 2001, Burlington, VT
- OC Instructor certification

IPTM Field Training Officer, 2003, VPA
- FTO certification

National Criminal Justice Training Council Use of Force Conference, 2003, Rolling Meadows, Ill.
- Dealing With High Risk Activity
- Tactical Edged Weapon Defense
- Understanding and Utilizing Use of Force legal Analysis
- Peak Performance Training for Critical Incidents

OC Instructor Course (Smith Enterprises), 2003, Pittsford, VT
- OC Instructor certification

Techniques and Tactics for Handcuffing (Smith Enterprises), 2003
- Instructor-Trainer certification

Monadnock International Instructor Seminar, 2004, New Orleans, LA (also staffed)
- PR-24 International Instructor re-certification
- Defensive Tactics System International Instructor re-certification
- Expandable (straight) Baton International Instructor re-certification
- Use of Force Spectrum
- Safety & the Monadnock Instructor
- Edged Weapons Awareness & Spontaneous Knife Defense
- Excited Delirium
- Connecting MEB, PR-24 & MDTS To Agency Use of Force Model
- Tactical Report Writing: changing the Paradigm

OC Instructor Course (VCJTC) 2006, Pittsford, VT
- OC Instructor Trainer Certification

Monadnock International Instructor Re-Certification 2006, Pittsford, VT
- MDTS International Instructor re-certification
- PR-24 International Instructor re-certification
- MEB International Instructor re-certification

TRAINING PROVIDED:

17 Monadnock Defensive Tactics System / NLUOF Instructor Courses

15 Monadnock Expandable Baton Instructor Courses

10 Monadnock PR-24 Baton Instructor Courses

Numerous Instructor Course re-certifications in MDTS / PR-24 and MEB

4 VCJTC Ground Fighting Instructor Courses (or assisted in portions)

3 Monadnock Defensive Tactics System Basic Courses

12 Monadnock PR-24 Baton Basic or Advanced Courses

17 Monadnock PR-24 Baton Pre-Basic Courses

26 Monadnock PR-24 Baton Re-certification Courses

5 Monadnock MEB Baton Basic Courses

19 VCJTC Basic Non-Lethal Use-Of-Force programs (includes MDTS) for full-time certification

Many department and other, defensive tactics and baton related training.

MEMBERSHIPS / JOURNALS / ELECTRONIC NEWSLETTERS:

>Police Marksman Association
>ISC Defensive Tactics Newsletter
>International Law Enforcement Educators and Trainers Association
>Force Science News
>Calibre Press – Street Survival Newsline
>AELE Legal Publications
>Public Agency Training Council E-Newsletter
>Law and Order Magazine
>Police Magazine
>Law Officer Magazine
>International Game Warden Association
>Vermont Game Wardens Association
>Vermont Police Association

EXPERT WITNESS CONSULTATIONS:

1998   Reginald Cyr v. VT State Police et al., U.S. District Court of Vermont
       Initial consult only to defendants, no report or opinion provided prior to settlement.

2000   Dean Kent v. Colchester Police Department et al., U.S. District Court of Vermont, Burlington. Testimony on 10/23/2003. Judgement for the defendant under qualified immunity by jury.

2000   Cheryl Lefebvre v. Burlington Police Department et al., U.S. District Court of Vermont, Burlington. Summary judgement for defendants.

2002   Lisa LaRoche v. Beers and Solomon, U.S. District Court of Vermont, Burlington. Beers case dismissed at plaintiff's request prior to trial. Testimony on 2/20/2003 in Beers case. Judgement for the defendant by jury.

2003   David Shockcor v. B. Vail, Hartford PD and Town of Hartford, Vt., Windsor Superior Court.  Summary judgement for defendant.

2004   Lorrie Fundis Manchester v. Douglas Dubie and the City of South Burlington, Vt., Chittenden Superior Court.  Settlement reached.

2005   State of Vermont, Attorney Generals Office Investigation.  Police Officer not charged.

2006   Staley v. Jack O'Connor et al, U.S. District Court of Vermont, Burlington.  Pending.

2007   Kenneth A. Adams v. Jeffrey Cirignano, et al, U.S. District Court of Vermont, Burlington. Pending.

2007   Review for Dept. of Human Services re: Woodside Juvenile Rehabilitative Center

2008   Keene v. Schneider, et al, U.S. District Court of Vermont, Burlington.  Pending.

2008   Peterson-Dunn v. Cirignano and Town of Berlin, U.S. District Court, Burlington. Pending

I am presently providing three instructor or instructor-trainer level programs at the Vermont Police Academy. I do this in my capacity as a Vermont state game warden specialist and as adjunct staff to the academy. In addition, I became lead instructor for the non-lethal use-of-force training of the basic full-time classes at the Vermont Police Academy in January 1998.

In addition to the many members of various law enforcement agencies that I have trained, I have also assisted the U.S. Customs Service in the implementation of a new agency wide defensive tactics and impact weapon program. I have provided training to the U.S. Customs Service national training cadre.

I have been a certified law enforcement officer with the Department of Fish & Wildlife since 1979. I coordinate and provide defensive tactics, baton, OC, legal and related tactical training to members of my department. My primary responsibility continues to be patrol and investigatory duties.