UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| TIMOTHY KEENE ) | |
| ) | |
| v. ) | |
| ) | Civil Action |
| DANIEL SCHNEIDER, ) | File No. 2:07-CV-79 |
| JARED HATCH, ) | |
| ) | |
| Defendants ) | |

PLAINTIFF'S RESPONSE TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff, Timothy Keene, by and through undersigned counsel, hereby opposes defendant's motion for summary judgment. In support of his opposition, plaintiff submits the following memorandum.

I.  FACTS

Just after midnight on September 16, 2005, Trooper Daniel Schneider drove to Timothy Keene's home in Marshfield.  Affidavit of Tr. Schneider.  Mr. Keene was sitting in his living room drinking beer and watching television, when Trooper Schneider arrived at his door. Trooper Schneider was there to talk with him about a complaint that he had been annoying Bonnie Breer at her residence earlier that night.  Keene depo. at 10-11, Hatch depo. at 5.  Mr. Keene was aware of the situation with Ms. Breer, although he disputed some of the things she had told the Trooper, but he told the Trooper that he would leave her alone.  Audio tape at 01:00.

While interacting with Mr. Keene in his living room, Trooper Schneider shifted his attention to the potential that Mr. Keene had been operating under the influence of alcohol when he drove to Ms. Breer's house and then back home approximately an hour before.  Affidavit of Tr. Schneider.  He engaged Mr. Keene in a conversation about his consumption of alcohol.

Schneider depo. at 48.  Mr. Keene questioned the officer about his interest.  Keene depo. at 16, 42-43.  He supplied the information that he had drunk perhaps three Natural Ice beers.  Keene depo. at 16-17.  The officer noted beer cans in the living room, and asked if that is what he had been drinking. Schneider depo. at 51.  Trooper Schneider asked him if he would step outside.  Schneider depo. at 50. Mr. Keene declined.  Schneider depo. at 50.  The officer then said he wanted to have him perform field sobriety exercises and Mr. Keene again declined.  Keene depo. at 20.

At that point, Trooper Schneider informed Mr. Keene that he was under arrest for suspicion of DUI.  Keene depo. at 21-22.  Mr. Keene told him that he hadn't been driving under the influence.  Keene depo. at 22-23.  The officer directed him to put his hands behind his back.  Schneider depo. at 10. Mr. Keene refused, while crossing his arms on his chest,  and again denied that he had been driving under the influence.   Schneider depo. at 10; audio at 05:40. The officer told him he would be sprayed with pepper spray if he didn't comply.  Schneider depo. at 17.  Mr. Keene asked what that was and then still refused to put his hands behind his back.  Schneider depo. at 17.  During this interaction, Mr. Keene's voice was quiet and he wasn't using any forceful language.  Schneider depo. at 12-13, 52. Trooper Schneider sprayed Mr. Keene in the face with the pepper spray and then knocked Mr. Keene to the floor.  Schneider depo. at 17-18.

At that point, Trooper Hatch entered Mr. Keene's home.  Hatch depo. at 8.  Trooper Hatch and Trooper Schneider were positioned on either side of Mr. Keene's prone body.  Schneider depo. at 22. Between the time Trooper Schneider knocked Mr. Keene to the floor and the time the first blows were struck was only a few seconds.  Audio at 7:40. During those seconds, the officers apparently tried to bring Mr. Keene's arms out from under him, while

shouting commands to stop resisting.  As soon as the officers started striking him, Mr. Keene tried to make them aware of his 14 year-old daughter who was present in the house.  Audio at 08:00; Schneider depo. at 27.  His attempts were sometimes interrupted by the blows.  Audio at 08:00.  His daughter came to the head of the stairs, crying for the officers to stop.  Schneider depo. at 27; audio at 08:41.

For approximately two minutes, Trooper Schneider struck Mr. Keene with his knees, closed fists and elbows.  Schneider depo. at 23; audio 07:30-09:30.  He could not recall how many blows he struck, but on listening to the recording he made of the interaction, he identified his "uh" noises of exertion as indicative of another blow to Mr. Keene's body by him and counted fourteen separate blows.  Schneider depo. at 15-16.  At the same time, Trooper Hatch inflicted five to ten knee strikes to Mr. Keene's prone body.  Hatch depo. at 12.

In the period during which he was being struck, there were brief pauses between the blows in which orders to "give up his hands" or to "stop resisting" were directed to Mr.Keene.  Schneider depo. at 23-24; audio 07:30-09:30. Mr. Keene was not fighting, thrashing or wrestling with the officers, he simple lay still, with his arms under him. Schneider depo. at 19-20, 32.  Hatch depo. at 9, 28-29.  At last, Mr. Keene responded to a pressure technique employed by Trooper Schneider and allowed the officers to bring his arms from under him.  Schneider depo. at 26, Hatch depo. at 12.  After he was handcuffed, it took Trooper Schneider over five minutes to recover his breath due to the exertion of the force he employed on Mr. Keene.  Schneider depo. at 16-17; audio 09:30-15:00.  Soon after the beating was over, Trooper Schneider turned off the body mic which had captured the interaction thus far on audiotape, to discuss with Trooper Hatch his concern that Mr. Keene had defecated in his pants in the course of the beating.  Schneider depo. at 27, 31-32.

Mr. Keene received no medical attention and did not have the pepper spray removed from his face for over twenty minutes after he was restrained, although the kitchen sink was readily available. Schneider depo. at 6. The officers chose to leave the house with Mr. Keene in custody with the burning caustic spray still on his face and meet an ambulance crew on the road. Schneider depo. at 34-35.

After he was processed on the DUI charge, with a BAC of .095, Mr. Keene was detained at the Dale Correctional Facility, where he requested medical assistance because he thought his arm and possibly his thumb were broken. Affidavit of Tr. Schneider; Keene depo. at 34-35. The next day, when he was so sore he could hardly move, he went to Central Vermont Hospital for treatment. Keene depo. at 35-36. While the pain from the physical blows which caused bruises lasted a few weeks, Mr. Keene's only lasting physical effect from the beating is on-going pain in his elbow. Keene depo. at 38, 40.

The DUI charge for which Trooper Schneider arrested Mr. Keene was dismissed by the State. Keene depo. at 43.

II. PLAINTIFF'S CONSTITUTIONAL CLAIMS PRESENT GENUINE ISSUES OF FACT AND THE DEFENDANTS ARE NOT ENTITLED TO JUDGMENT AS A MATTER OF LAW.

    A.    Count I: Violation of of 42 U.S.C. § 1983; Excessive force incident to arrest.

        1. An issue exists as to whether the force used in the arrest was reasonable.

"Under the Fourth Amendment which governs the use of force in connection with an arrest, law enforcement officers may use only such force as is objectively reasonable under the

circumstances." *O'Bert ex rel. Estate of O'Bert v. Vargo*, 331 F.3d 29 (C.A.2 Vt. 2003). Under *Graham v. Connor*, 90 U.S. 386 (1989), a determination of use of excessive force during arrest is to be evaluated by balancing the character and nature of the intrusion on plaintiff's Fourth Amendment rights and the government interests at stake. "Reasonableness" is not capable of being subject to precise definition and mechanical application. The holding there requires "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id*. at 396.

In the instant case, the crime for which Trooper Schneider sought to arrest Mr. Keene was Driving Under the Influence; a crime which carries an inherent public safety risk. In this case, however, the operation of the vehicle occurred approximately an hour before the time Trooper Schneider interacted with Mr. Keene. Even if a crime had been committed, no present danger existed. When Mr. Keene came to Trooper Schneider's attention, he was sitting quietly in his living room, watching television and drinking beer. There is no argument that he was in any way a public safety risk at the time Trooper Schneider decided to arrest him. Although Trooper Schneider had a reasonable basis to arrest Mr. Keene, the DUI misdemeanor charge was later dismissed by the State.

Trooper Schneider talked to Mr. Keene, in his living room, for over five minutes before he made the decision to arrest him. In that time, he had ample opportunity to determine that Mr. Keene did not have access to any weapons. While he did not cooperate with the officer, Mr. Keene made no movements or gestures that were assaultive. He didn't raise his voice or swear until after he had been sprayed and knocked to the ground, except on a second request that

Trooper Schneider stop flashing his flashlight in Mr. Keene's eyes. The only physical actions he took in response to the police conduct, were an initial crossing of his arms in front of his chest and then, after he had been sprayed in the face with the pepper spray and knocked to the ground, keeping his arms under his chest. He didn't flail about, or struggle, he simply wouldn't supply his arms for cuffing.

After incapacitating Mr. Keene by applying the pepper spray, Trooper Schneider chose to knock Mr. Keene to the ground. Once on the ground, it only took seconds before the first blow was struck by Trooper Schneider. The officers chose to release control of his arms and strike Mr. Keene, at least fourteen times by Trooper Schneider, and five to ten more knee strikes by Trooper Hatch. They acknowledged that the blows were completely ineffective.

Additionally, police failure to remove the pepper spray from an arrestee's face for an extensive period after obtaining compliance has been deemed a use of excessive force. "[T]he use of such weapons (e.g., pepper sprays; police dogs) may be reasonable as a general policy to bring an arrestee under control, but in a situation in which an arrestee surrenders and is rendered helpless, any reasonable officer would know that a continued use of the weapon or a refusal without cause to alleviate its harmful effects constitutes excessive force." *LaLonde v. County of Riverside*, 204 F.3d 947, 961 (C.A.9 Cal. 2000). In this case, rather than use the sink at Mr. Keene's home to remove the pepper spray from his face, Trooper Schneider drove to meet rescue squad personnel. It took over twenty minutes from the time Mr. Keene was restrained and compliant, to the time the spray was removed.

The calculus of the reasonableness of the officers' conduct must take into account "spilt-second judgments-in circumstances that are tense, uncertain, and rapidly evolving. . . ." *Graham v. O'Connor*, 490 U.S. at 396. The officer's actions here were not the result of split-second

decision-making.  The timing of every event was at the direction of the officers alone.  Mr. Keene did not use violence to resist; he never made any sudden movements which might have forced the officers to make quick decisions in reaction.  It was Trooper Schneider's decision to knock him down; Trooper Schneider's decision to give up attempting to work in unison with Trooper Hatch to pull Mr. Keene's arms out from under him after only a few seconds; Trooper Schneider and Trooper Hatch's decision to employ ineffective blow after ineffective blow to Mr. Keene's body, with momentary returns to tugging on his arms; and Trooper Schneider's decision to keep the pepper spray on Mr. Keene's face for over twenty minutes rather than using the facilities in his home.

Mr. Keene awoke the next day feeling sore from head to toe.  He received treatment for his injuries at Central Vermont Hospital and later through his primary care physician.  The bruising and aches and pains resolved within a few weeks, but he has a lingering injury to his right elbow.

Given the conduct of the officers here, both the blows to Mr. Keene's body and the refusal of the officers to wash the pepper spray from Mr. Keene's face, a jury could conclude that the force employed in the arrest of this man in his living room on suspicion of DUI was disproportionate to the circumstances and therefore unreasonable.

      2.  Defendant officers are not entitled to judgment on the basis of qualified immunity.

The Supreme Court has ruled that even officers who are found to have used excessive force may be entitled through the qualified immunity doctrine to an extra layer of protection "from the sometime hazy border between excessive and acceptable force."  *Stephenson v. Doe*,

332 F.3d 68, 77 (2d. Cir. 2003).  "At the summary judgment stage, the defense of qualified immunity is appropriate when 'the only conclusion a rational jury could reach is that reasonable officers would disagree about the legality of the defendants' conduct under the circumstances.'" *Flanigan v. Town of Colchester*, 171 F.Supp.2d 361, 366 (2001).

  The issue is "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  *Saucier v. Katz*, 533 U.S. 194 (2001).  Under the Fourth Amendment "objective reasonableness" standard of *Graham v. Conner*, 90 U.S. 386 (1989), the proportion of force and harm is balanced with the severity of the crime at issue, the threat the arrestee poses, and whether he is fleeing or otherwise actively resisting arrest.  *Id*. at 396.  Under the facts, as set forth above, there is a basis to believe a jury could find that the force used by the officers in arresting a man in his own living room, non-violently resisting arrest for suspicion of a previously committed DUI was disproportionate and therefore unreasonable.

  Secondly, as discussed above, the officers' conduct was violative of Mr. Keene's clearly established right not to be subjected to excessive force, through the beating that was a disproportionate response to the risks posed in his arrest, and through the officers unnecessary prolonging of the caustic effects of the pepper spray.  *Rowland v. Perry*, 41 F.3d 167, 173-174 (1994); *LaLonde v. County of Riverside*, 204 F.3d  947, 961 (C.A.9 Cal. 2000).

  Defendants reliance on *Flanigan v. Town of Colchester*, 171 F.Supp.2d 361, 365-66 is inappropriate.  There, the police were called when Flanigan  threatened his neighbor with a firearm over a noise complaint.  When the police determined to take Flanigan into custody as an incapacitated person, he not only said "no" to the command to put his hands behind his back, but he took several steps away from the officers, toward the house where the firearm was located.  He was taken to the ground, but was not struck.  These facts are not similar to the case in hand,

where Mr. Keene stood passively, with his arms crossed, posing no risk to officers' safety and where he was repeatedly struck while he lay still on the ground.

"Summary Judgment should not be granted on the basis of a qualified immunity defense premised on the assertion of objective reasonableness unless the defendant shows that no reasonable jury, viewing the evidence in the light most favorable to the Plaintiff, could conclude that the defendant's actions were objectively unreasonable in light of clearly established law." *O'Bert ex rel. Estate of O'Bert v. Vargo*, *supra* at 37. The Court is not to simply rely on Defendant officers' self-serving account, rather the court must also consider whether other evidence could convince a rational factfinder that the officers' conduct was unreasonable. *Scott v. Henrich*, 39 F.3d 912 , 915 (9th Cir.1994).

For the reasons set forth above, a jury could conclude that the actions of Defendants were objectively unreasonable in light of clearly established law. There is a dispute as to material facts which must be resolved by the factfinder, thus consideration of these facts by the jury is required. *Kerman v. City of New York*, 374 F.3d 93, 109 (S.A. 2d 2004).

  B.  Count II: Assault and Battery of Plaintiff

   1. Defendant officers are not entitled to judgment on the basis of qualified immunity.

Under the analysis above, defendants' motion for summary judgment must also fail as to Count II. Plaintiff has alleged a disproportionate use of force in response to a set of circumstances under which a rational factfinder could conclude that no reasonable police officer would believe the officers' actions were reasonable.

III.   SUMMARY

The rules are well established.  Summary judgment cannot be granted unless there is no dispute as to material fact and the moving party is entitled to judgment as a matter of law.  The evidence put forth by the non-moving party must be taken as true.  From that vantage point, if any material fact remains in dispute, the motion must be denied.  *See*, *e.g. Decker v. Fish*, 126 F.Supp.2d 342 (D.Vt. 2000).  The defendants have failed to make the requisite showing, consequently, the motion must be denied.

Wherefore, for all the foregoing reasons, the plaintiff respectfully requests that the defendants' motion for summary judgment be denied in its entirety.

Dated at Barre, Vermont this 26th day of September 2008.

TIMOTHY KEENE

By:/s/ Maggie K. Vincent
    Rubin, Kidney, Myer & DeWolfe
    237 North Main Street
    Barre, VT 05641
    802-479-2514
    maggievincent@hotmail.com

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| TIMOTHY KEENE ) | |
| ) | |
| v. ) | |
| ) | Civil Action |
| DANIEL SCHNEIDER, ) | File No. 2:07-CV-79 |
| JARED HATCH, ) | |
| ) | |
| Defendants ) | |

**CERTIFICATE OF SERVICE**

    I hereby certify that on September 26, 2008, I electronically filed with the Clerk of the Court the following document:

    Plaintiff's Opposition to Defendant's Motion for Summary Judgment

using the CM/ECF system.  The CM/ECF system will provide service of such filing via Notice of Electronic Filing (NEF) to the following NEF party:

    David Cassetty, Esq.
    Assistant Attorney General

    Dated at Barre, Vermont this 26th day of September 2008.

                               TIMOTHY KEENE


                               By: /s/ Maggie K. Vincent
                                  Rubin, Kidney, Myer & DeWolfe
                                  237 North Main Street
                                  Barre, VT 05641
                                  802-479-2514
                                  maggievincent@hotmail.com